**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

DELAMAR BROWN,

                                        Petitioner,

                    v.                                                    No. 11-CV-972
                                                                              (GLS/CFH)

M. BRADT, Superintendent,

                                        Respondent.
_____

**APPEARANCES:**                              **OF COUNSEL:**

DELAMAR BROWN
06-B-2999
Petitioner Pro se
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

HON. ERIC T. SCHNEIDERMAN              PAUL M. TARR, ESQ.
Attorney General for the                        Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Petitioner pro se Delamar Brown ("Brown") is currently an inmate in the custody of the

New York State Department of Correctional and Community Supervision ("DOCCS") at the

Green Haven Correctional Facility ("Green Haven").  On November 5, 2006, after a jury trial

in the Oneida County Court, Brown was convicted of two counts of murder in the second

_____

        [1]  This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

degree.  People v. Brown, 67 A.D.3d 1369, 1369 (4th Dep't 2009).  Brown was sentenced

to, and is presently serving, two consecutive prison terms of twenty-five years to life.  Pet.

(Dkt. No. 1) ¶ 3.  Brown now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254,

challenging his conviction and sentence.  Pet. ¶ 12.  For the reasons that follow, it is

recommended that the petition be denied.


## I. Background

On September 11, 2006, a jury trial commenced at the Oneida County Courthouse,

which resulted in the presently challenged conviction and sentence.[2]  Tr. #1 (Dkt. No. 19) at

1.[3]  Prior to trial, defense counsel filed an omnibus motion, making a number of demands,

including:  (1) a demand for discovery; (2) suppression of identification, statement, physical

and prior crimes evidence; (3) inspection of the grand jury minutes; and (4) the appointment

of an investigator and other experts.  Dkt. No. 18-6 at 2–3.  This motion led to a Sandoval

and Ventimiglia hearing on the admissibility of Brown's convictions, uncharged crimes, and

prior bad acts, and a Wade hearing to determine the suppression of identification

testimony.[4]  Dkt. Nos. 18-1 at 9, 18-7 at 2–3, 6.

─────────────────

[2]  Brown had two prior trials which ended in hung juries.  See Pet. ¶ 12(A), at 13.

[3]  The page numbers following "Tr. #" refer to the header numbers generated by CM/ECF, not the pagination of the individual transcripts.

[4]

> A hearing is held pursuant to People v. Sandoval, 34 N.Y.2d
> 371 . . . (1974), to determine the extent to which Petitioner,
> should he decide to testify, could be cross-examined regarding
> prior crimes and bad acts bearing on his credibility, veracity, or
> honesty.  A hearing pursuant to People v. Ventimiglia, 52
> N.Y.2d 350 (1981) is held to determine whether to admit

## A. The Prosecution's Case

Among others, the prosecution called Troy Evers ("Evers"), Gregory Wainwright ("Wainwright"), Wainwright's cousin Joann Garcia ("Garcia"), Wainwright's girlfriend Juanita Hill ("Hill"), and Wainwright's sister Tonay Stewart ("Stewart"), as witnesses against Brown.[5] Tr. #1 at 222, 405–06; Tr. #2 (Dkt. No. 20) at 274–75. In August 2004, Brown went with Evers to Utica to help Evers and Wainwright sell drugs. Tr. #1 at 345–476. Brown stayed at Evers's house, where the drugs were sold. Id. at 267–68. At that time, Garcia was living in an apartment on West Street with Hill and others. Tr. # 2 at 110–11, 121, 165, 361–62, 370. Evers had attempted to romantically link Garcia to Brown; however, neither Garcia nor Brown confirmed interest in each other. Tr. #1 at 379.

In the afternoon of August 15, 2004, Evers called Garcia and asked her to cook dinner for him. Tr. #1 at 347; Tr. #2 at 112. Garcia agreed, on the condition that Evers paid for the groceries. Tr. #2 at 112. Brown used Evers's car to drive Garcia to the store. Tr. #1 at

---

evidence of uncharged crimes after a balancing of the
prejudicial impact of the evidence against its probative value.

Perkins v. McGinnis, No. 05-CV-443, 2008 WL 4372650, at *3 n. 5 (N.D.N.Y. Sept. 19, 2008). A Wade hearing "determine[s] if any of the identification procedures had been unduly suggestive." Maldonado v. Burge, 697 F. Supp. 2d 516, 521 (S.D.N.Y. 2010) (citing United States v. Wade, 388 U.S. 218, 232 (1967)).

All unpublished opinions cited to by the Court in this Report-Recommendation are, unless otherwise noted, attached to this Recommendation.

[5] Throughout the trial, the witnesses were referred to by their street names. Brown was known as "De De" or "Done'Em"; Troy Evers was known as "Jesus"; Gregory Wainwright was known as "Castro"; Brian West was known as "Little B"; Ricky Powell was known as "Streets"; Joann Garcia was known as "Mama"; and Veline Hicks was known as "Kilo." See, e.g., Tr. #1 at 243, 347–348; 359–360; Tr. #2 at 129; Tr. #3 (Dkt. No. 21) at 89.

3

347–48; Tr. #2 at 112. Later that evening, Garcia called Evers to tell him that the food was ready. Tr. #2 at 114. Brown and Wainwright arrived to pick up the food but returned to Evers's house to retrieve plates for their food. Tr. #1 at 349–50; Tr. #2 at 115. Maurice West was at Garcia's apartment and called Ricky Powell ("Powell") to come over. Tr. #2 at 116–17. When Brown and Wainwright returned with plates, Ricky Powell and Brian West, who was Maurice West's brother, followed them into the apartment. Id. at 117.

Garcia gave the food to Powell, Maurice West, and Brian West first and then served Brown and Wainwright, which angered Brown. Tr. #3 at 83. Brown and Powell "sized" up each other. Tr. #2 at 363. Wainwright then took the plates made for Brown, Evers, and himself and placed the plates in the back of the car. Id. at 118, 271.

Brown left Wainwright at Garcia's apartment and drove to Evers's house. Tr. #1 at 350. Brown searched through his possessions and walked back to Garcia's apartment. Id. at 351. When Evers, who had followed Brown by car, arrived in front of Garcia's apartment, Wainwright came out of Garcia's apartment and told Brown that Powell and Brian West did not want any problems and Evers told Brown to "leave it alone." Id. at 351–52. Hill was outside, stuck her head in the window of Evers's car and called Brown a "crazy motherfucker." Tr. #2 at 364. Brown replied, "no, I'm not crazy, because if I had my ratchet on me, he'd be dead, I'd have blew his brains all over the kitchen." Id. at 364. During this time in Garcia's apartment, upon Powell's request, Garcia gave Powell the unloaded hand-gun that she had been holding for him and Powell put it in his pocket. Id. at 135–37.

Powell, Brian West, and Brown then confronted each other outside the apartment building. Tr. #1 at 352–53. Powell asked Brian West for the keys to his car, at which time Brown drew a handgun from his waistband and shot Brian West in the face. Id. at 367–68;

4

Tr. #2 at 272–73.  Brown shot Powell in the back.  Tr. #1 at 353.  Brown then shot Powell and Brian West several more times when they were down on the ground.  Id. at 354.  Evers watched all this transpire while he was in his car.  Id. at 352, 354, 367–68.  Evers and Brown drove away in Evers's car.  Id. at 377.  Shortly thereafter, Maurice West went outside, saw his brother on the ground, tore off his plaid shirt, and ran away along West Street.  Tr. #2 at 125.

Wainwright fled to an apartment he shared with Stewart.  Tr. #2 at 274–75.  Evers, Wainwright, and Brown reconvened at the apartment of Niya Gaston, who was Evers's girlfriend.  Tr. #1 at 355.  Later that night, Stewart picked up Evers, Wainwright, and Brown near Gaston's apartment.  Id. at 357; Tr. #2 at 276.  Wainwright told Stewart about the double homicide.  Tr. #2 at 277.  Stewart asked Wainwright if he was the shooter, to which Brown interjected and said Wainwright was not involved for it was he who shot Powell and Brian West.  Id.  After this confession, Stewart ordered Brown to get out of her car.  Id. at 278.  Brown took Evers's car and drove to New York City.  Tr. #1 at 356–57.  The next day, Wainwright saw his probation officer and told him that he had witnessed a double homicide.  Tr. #2 at 289.

One unloaded handgun was recovered in connection with the double homicide, which was found on the hospital grounds where the paramedics unloaded Powell from the ambulance.  Tr. #2 at 99–102.  Five expended cartridge cases were recovered at the crime scene, all were consistent with having been fired from a single gun.  Id. at 113–14.

## B.  The Defense's Case

The defense called Maurice West, Gaston, Investigator Steven Hauck, a Utica resident

named Jason Cruz, and Brown as witnesses. Tr. #1 at 223. The events leading up to the incident on August 15, 2004 were largely undisputed by the defense. Brown initially went to Utica to visit Veline Hicks, a friend who was incarcerated at Mid-State Correctional Facility. Tr. #3 at 88, 90. Brown wanted to return to New York City after a couple of days in Utica but Evers said he had to report to his parole officer first. Id. at 91. In the meantime, Brown helped Evers sell drugs. Id. Brown confirmed that nothing remotely romantic occurred between himself and Garcia and Evers's primary purpose in Utica was to sell drugs. Id. at 92–93, 95.

During the evening of August 15, 2004, when Brown and Wainwright returned to Garcia's apartment with their plates, Brown received a phone call on a cell phone borrowed from Evers asking for Evers. Tr. #3 at 98–100. Brown told the caller that he would have to return the call because Evers was not around. Id. at 100. Brown drove back to Evers's house and found Evers speaking on the phone. Id. Brown and Evers returned to Garcia's apartment and saw Wainwright walking out with plates in his hands. Id. at 101. Powell and Brian West followed Wainwright. Id. at 102. Wainwright exchanged words with Powell and Brian West, dropped the plates, pulled out a gun, and fired the gun.[6] Id. Wainwright got into the car and Evers drove off with Brown and Wainwright. Id. at 103.

Down the street, before the shots were fired, Powell, Brian West, and Cruz were outside Cruz's house running footraces against each other. Tr. #3 at 4–5. Cruz's cousin Mario Mateo and Cruz's friend Maurice Vines were also present. Id. at 7. Powell received a phone call, threw his keys at Brian West, walked down the street, and Brian West

---

[6] Utica police investigators testified that they found no plates or food on the street where the incident occurred. Tr. #2 at 191, 243, 262.

followed Powell by car.  Id. at 6.  Cruz started to walk into his house when he heard

gunshots.  Id. at 7.  Cruz looked pass his driveway and saw two bodies on the streets, then

asked Vines to call 911 while he ran down the block to where the two bodies were located.

Id. at 8–9.  Cruz saw Brian West who was not breathing.  Id. at 9.  Cruz saw that Powell

was still breathing, bended down, and tried to help him but Powell said to not touch him.  Id.

at 10–11.  Mateo saw Cruz kneeling down next to Powell.  Id. at 53.

Cruz asked Powell, approximately three times, for the person who shot him.  Tr. #3 at

10.  Powell asked Cruz to call Powell's girlfriend and gave Cruz the first three digits of the

phone number.  Id. at 11.  As for the shooter, Powell first said, "you know who it was."  Id.

Powell then said "Ester" or "Astro."  Id.  However, Cruz was unsure as to what Powell

actually said because there was blood gushing out of Powell's mouth.  Id.  Cruz did not

know a person by the name of Ester, Astro, or Castro.  Id. at 12.  After the exchange

between Cruz and Powell, a police officer grabbed Cruz and told Cruz to stay in the middle

of the street.  Id.  Cruz was then subsequently taken to the police precinct where his

statement was taken.  Id. at 16.


### C. Trial Court's Conduct

The trial court gave the following sua sponte instruction during the prosecution's direct

case,

> As far as any witness is concerned, when they are asked about
> prior convictions they may have, that is not done to embarrass or
> humiliate the witness.  Those prior convictions are brought out to
> show you the prior convictions.  And if you think that those
> convictions are important in making a determination of the
> witness's credibility, you can use those prior convictions for that
> purpose and that purpose only.  If you don't think that those prior

> convictions are important in making a determination of the
> witness's credibility, then you should disregard all of that
> testimony.

Tr. #1 at 382–83. At a later time, in the jury's absence, the trial court admonished trial

counsel for walking behind the District Attorney's table and restricted such movement

accordingly. Tr. #2 at 177. For Wainwright's cross-examination, the trial court precluded

testimony concerning Wainwright's prior drug dealing activities and working off the books

because the evidence was deemed collateral.[7] Id. at 313, 323.

### D. Verdict and Sentencing

On September 21, 2006, a jury found Brown guilty of two counts of murder in the

second degree. People v. Brown, 67 A.D.3d 1369, 1369 (4th Dep't 2009); Tr. #3 at

340–42. On November 6, 2006, Brown was sentenced to consecutive terms of twenty-five

years to life imprisonment. Tr. #3 at 395.

### E. Direct Appeal

On direct appeal and represented by counsel, Brown raised six claims: (1) the

---

[7] To the extent that Brown attempted to allege a deprivation of a right to present a defense because the trial judge interrupted trial counsel by asking how his questions were relevant, this claim must fail. Tr. #3 at 77. Trial counsel was attempting to elicit testimony from Maurice West that he initially accused Wainwright of murdering his brother because his neighbors told him so. Id. at 76–77. The trial judge conducted a sidebar with trial counsel and trial counsel opted to end that line of questioning, presumably because Maurice West's testimony was consistent with prior testimony given at trial. See Tr. #1 at 261–71.

cumulative effect of prosecutorial misconduct and trial court errors denied Brown a fair trial;[8]

(2) the evidence against Brown was legally insufficient and the verdict was against the

weight of the evidence;[9] (3) defense counsel's failure to object to the prosecution's

summation statements and move to dismiss the indictment or set aside the verdict

constituted ineffective assistance; (4) the Sandoval and Ventimiglia rulings improperly

admitted evidence of Brown's prior bad acts; (5) the trial court improperly denied Brown

expert funds; and (6) the sentence imposed was unduly harsh. Dkt. No. 18-1 at 3–4.

On November 13, 2009, the Appellate Division, Fourth Department, unanimously

affirmed the conviction. Brown, 67 A.D.3d at 1369. First, the Appellate Division held that

Brown failed to preserve the prosecutorial misconduct claim for appellate review, id. (citing

People v. Bankston, 63 A.D.3d 1616, 1616 (4th Dep't 2009); People v. Haynes, 35 A.D.3d

1212, 1213 (4th Dep't 2006), lv. denied, 8 N.Y.3d 946 (2007)), "and, in any event, it [was]

without merit." Id. The Appellate Division explained that "[t]he prosecutor properly

---

[8] Prosecutorial misconduct included: (1) using a prior written statement to impeach prior prosecution witness Cruz; (2) discrediting Cruz's credibility during summation; and (3) vouching for prosecution witnesses' credibility during summation. Dkt. No. 18-1 at 50–52. Trial court errors included: (1) giving an unsolicited jury charge concerning a prosecution witness's prior convictions that "soften[ed] the blow" of defense's cross-examination of the same witness; (2) giving an unsolicited jury charge concerning another prosecution witness's prior convictions that advanced the prosecution's case; (3) restricting the defense counsel's movements during cross-examination; and (4) assisting the prosecution in the marshalling of evidence and previewing the prosecution witnesses' testimonies. Id. at 52–55.

[9] Brown argued that the evidence was legally insufficient because: (1) the murder weapon was not recovered; (2) he was at the crime scene and saw Wainwright as the shooter; (3) the prosecution relied on the testimonies of three witnesses, Evers, Wainwright, and Hill, whose credibility were questionable because they gave their testimonies in exchange for the dismissal of perjury charges; and (4) Cruz's testimony with regard to Powell's uttering of "Ester" or "Astro" created reasonable doubt. Dkt. No. 18-1 at 55–64.

9

attempted to impeach a defense witness whose testimony differed from his testimony as a prosecution witness in [Brown's] earlier trial, which resulted in a hung jury." Id. Further, "[t]he prosecutor's comments on summation were fair response[s] to defense counsel's summation." Id. (citing People v. Halm, 81 N.Y.2d 819, 821 (1993); People v. Seeler, 63 A.D.3d 1595, 1596 (4th Dep't 2009)). Second, the Appellate Court held that Brown failed to preserve for review the trial court errors claim, id. (citing N.Y. CRIM. PROC. LAW § 470.05(2)),[10] and declined to invoke its discretionary review, id. (citing N.Y. CRIM. PROC. LAW § 470.15(6)(a)).[11] Third, because Brown failed to move for dismissal, the sufficiency of the evidence claim was unpreserved, id. (citing People v. Gray, 86 N.Y.2d 10, 19 (1995), and in any event, it lacked merit, id. (citing People v. Bleakley, 69 N.Y.2d 490, 495 (1987)). The panel opined that the prosecution witnesses' testimonies were "not manifestly untrue, physically impossible, contrary to experience, or self-contradictory." Id. (citing inter alia, People v. Harris, 56 A.D.3d 1267, 1268 (4th Dep't. 2008), lv. denied, 11 N.Y.3d 925 (2009))

---

[10]  Section 470.05(2) directs that

> [f]or purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest . . . is sufficient if the party made his position with respect to the ruling or instruction known to the court. . . .

Id.

[11]  Section 470.15(6)(a) directs that "[t]he kinds of determinations of reversal or modification deemed to be made as a matter of discretion in the interest of justice include . . . an error or defect occurring at a trial resulting in a judgment, which error or defect was not duly protested at trial . . . ." Id.

(internal quotation marks omitted).  As for the weight of the evidence claim, the Appellate Division concluded that the verdict was not against the weight of the evidence.  <u>Id.</u> (citing <u>Bleakley</u>, 69 N.Y.2d at 495).  "The credibility of the witnesses was an issue for the jury to determine" and the Appellate Division found "no basis for disturbing that determination."  <u>Id.</u> (citing <u>People v. Massey</u>, 61 A.D.3d 1433, 1433 (4th Dep't), <u>lv.</u> <u>denied</u>, 13 N.Y.3d 746 (2009); <u>People v. Scott</u>, 60 A.D.3d 1396, 1397 (4th Dep't), <u>lv.</u> <u>denied</u>, 12 N.Y.3d 821 (2009)).

Fourth, Brown's ineffective assistance of counsel claim based on trial counsel's failure to object to the prosecutor's summation comments and to move for an order of dismissal were denied because both assertions were without merit, <u>id.</u> (citing <u>People v. Caban</u>, 5 N.Y.3d 143, 155 (2005); <u>People v. Francis</u>, 63 A.D.3d 1644, 1644 (4th Dep't 2009)), and Brown was held to have received meaningful representation, <u>id.</u> (citing <u>People v. Baldi</u>, 54 N.Y.2d 137, 147 (1981)).  Fifth, Brown failed to preserve his claim concerning the <u>Ventimiglia</u> ruling, <u>id.</u> (citing <u>People v. McClain</u>, 250 A.D.2d 871, 872 (3d Dep't), <u>lv.</u> <u>denied</u>, 92 N.Y.2d 901) (1998)), and the court declined to exercise discretionary review, <u>id.</u> (citing N.Y. CRIM. PROC. LAW § 470.15(6)(a)).  Sixth, the Appellate Division found that Brown failed to show that fees were necessary for securing expert services.  <u>Id.</u> (citing <u>inter</u> <u>alia</u>, <u>People v. Koberstein</u>, 262 A.D.2d 1032, 1033 (4th Dep't), <u>lv.</u> <u>denied</u>, 94 N.Y.2d 798 (1999); <u>People v. Drumgoole</u>, 234 A.D.2d 888, 889–90 (4th Dep't 1996), <u>lv.</u> <u>denied</u>, 89 N.Y.2d 1011 (1997); N.Y. COUNTY LAW § 722-c).  Lastly, the sentence was not unduly harsh or severe.  <u>Id.</u>

Brown sought leave to appeal to the Court of Appeals and raised the same claims as those before the Appellate Division.  Dkt. No. 18-4.  On May 17, 2010, the New York Court of Appeals denied leave to appeal.  <u>People v. Brown</u>, 14 N.Y.3d 886, 886 (2010); Dkt. No.

18-5 at 2.  Brown did not file any state collateral motions.

### F.  Petition Before This Court

On May 6, 2011, Brown filed a habeas corpus petition raising seven claims.  The first claim involves prosecutorial misconduct.  Pet. at 10–19.  Brown alleged that the prosecutor attempted to improperly impeach Cruz with Cruz's prior testimony at Brown's second trial as the prosecution's witness.  Id. at 12–15.  Further, during summation, the prosecutor made several prejudicial comments, including:  (1) Cruz was not credible; (2) if Cruz was found credible, then the police planted the evidence; (3) if the jury found Evers, Wainwright, Stewart, or Hill credible, then Brown was guilty; (4) the prosecution's witnesses were credible; and (5) he was prohibited from putting a person on the witness stand whom he believed was lying.  Id. at 15–17.

Second, Brown claims that the trial court made several errors.  Pet. at 10.  Brown contended that the trial court acted improperly in giving sua sponte jury instructions concerning prior convictions that unfairly benefitted the prosecution, restricting the cross-examination of Wainwright, restricting defense counsel's movements in the courtroom, and facilitating the prosecution's case by giving a preview of the prosecution witnesses' testimonies.  Id. at 20–25.  Brown argued that the court should have given the same prior convictions jury charge when he was cross-examined about possessing an identification card bearing someone else's name.  Id. at 23.  Brown also argued that the cumulative effect of prosecutorial misconduct and trial court errors deprived him of a fair trial.  Id. at 19, 26.

Third, Brown claims that he received ineffective assistance of trial counsel when defense counsel failed to object to the previously discussed trial court errors and the

<u>Ventimiglia</u> ruling.  Pet. at 29.

Fourth, the evidence was legally insufficient to establish Brown's guilt beyond a reasonable doubt.  Pet. ¶ 12(D).  Brown contended that:  (1) the testimonies of Evers, Wainwright, Hill, and Stewart were manifestly untrue and contradictory; (2) the murder weapon was never recovered; (3) proof of motive cannot substitute for legally sufficient proof of the elements of the crimes; (4) Evers, Wainwright, Hill, and Stewart testified against him in exchange for the dismissal of perjury charges; (5) the prosecution improperly attempted to impeach Cruz, who was a prior prosecution witness; and (6) Cruz's testimony with respect to Powell uttering "Astro" or "Castro" was sufficient proof to create reasonable doubt.  <u>Id.</u> at 31–33, 42.

Fifth, Brown argued that the trial court improperly refused his request for funds to secure experts.  Pet. at 43.

Sixth, Brown argued that the <u>Ventimiglia</u> ruling, which made admissible the evidence that Brown possessed an identification card bearing someone else's name, weapons, and sold drugs, was erroneous.  Pet. at 47; Dkt. No. 18-1 at 65–66.  The testimony should have been excluded because his case did not involve a drug sale and it only tended to show Brown's criminal propensity.  <u>Id.</u> at 48–49.

Seventh, Brown argued that he received ineffective assistance of appellate counsel because appellate counsel failed to raise an ineffective assistance of trial counsel claim based on the trial counsel's failure to object to trial court errors, the <u>Ventigmlia</u> ruling, and the admission of Brown's prior bad acts into trial evidence.  Pet. at 52.

For the trial court errors and <u>Ventimiglia</u> ruling claims, Brown alleged that any cause or prejudice for procedural default was due to ineffective assistance of trial and appellate

counsel.  Pet. at 26–27, 49–50.

## II. Exhaustion[12]

It is well-settled that before seeking habeas review, a petitioner must first exhaust all state remedies.  28 U.S.C. § 2254(b), (c); <u>Shabazz v. Artuz</u>, 336 F.3d 154, 160 (2d Cir. 2003) (quoting <u>Aparicio v. Artuz</u>, 269 F.3d 78, 89 (2d Cir. 2001)).  Specifically, 28 U.S.C. § 2254(b)(1)(A) & (B) directs that

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

<u>Id.</u>

The exhaustion principle is "grounded in principles of comity; in a federal system, the

---

[12]  Respondent concedes that Brown's petition was timely filed.  Resp't Mem. (Dkt. No. 17) at 18.  Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), the one-year time period for filing a federal habeas corpus petition starts to run when the conviction becomes "final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A); <u>Cook v. N.Y. State Div. of Parole</u>, 321 F.3d 374, 279–80 (2d Cir. 2003).  A judgment of conviction becomes final at the conclusion of the ninety-day period during which the defendant could seek certiorari review from the United States Supreme Court.  <u>Epps v. Poole</u>, 687 F.3d 46, 49 (2d Cir. 2012) (citations and footnote omitted). Here, the Court of Appeals denied Brown leave to appeal on May 17, 2010; thus, Brown's time to seek a writ of certiorari expired on Monday, August 16, 2010.  Brown had until August 16, 2011 to file his petition.  Because Brown's petition was signed on May 6, 2011 and filed on July 21, 2011, this petition was timely filed.

States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991). Thus, pursuant to § 2254(b)(1)(A), "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). State remedies are "properly exhausted" when the petitioner has "fairly presented" to the state court, O'Sullivan, 526 U.S. at 848, "both the factual and legal premises of the claim he asserts in federal court." Daye v. Attorney General of New York, 696 F.2d 186, 191 (2d Cir. 1982) (citations omitted). The petitioner may fairly present the constitutional nature of his claim by

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Id. at 194. In addition, the petitioner must seek discretionary review where it is available at the highest state court and raise the same federal constitutional claims. See O'Sullivan, 526 U.S. at 847–48; Brown v. Senkowski, 152 F. App'x 15, 17 (2d Cir. 2005). The petitioner bears the burden of proving exhaustion. Colon v. Johnson, 19 F. Supp. 2d 112, 119–20 (S.D.N.Y. 1998) (citations omitted).

In this case, it is uncontested that, although couched solely in state law terms, Brown exhausted his prosecutorial misconduct and legal sufficiency claims. Defs.' Mem. of Law (Dkt. No. 17) at 15–16. Brown also exhausted his trial court error claim. Brown's allegation that the trial court's erroneous restriction of Wainwright's cross-examination, which goes to

a defendant's right to confrontation, is a claim that is well within the mainstream of constitutional litigation. See, e.g., Perez v. McGinnis, No. 96-CV-5858 (ARR), 1999 WL 1021818, at *5 (E.D.N.Y. Jan. 4, 1999) ("a claim of improper curtailment of cross-examination of an adverse witness directly calls to mind a defendant's Sixth Amendment right of confrontation" and plaintiff was held to have fairly presented to the state court his federal claim). Further, Brown's allegations of an improper jury charge, restriction of defense counsel's movement, and improper assistance by previewing the prosecution witnesses' testimonies for the jury, where the trial judge allegedly acted with partiality, are well within the mainstream of due process adjudication. Daye, 696 F.2d at 196–97 ("Under the Due Process Clause there is a well developed right, established in a long line of cases, to a trial before an unbiased judge. The fundamental nature of this right is demonstrated by the fact that not even the appearance of bias is tolerated"). Accordingly, Brown's trial court error claim is exhausted.

Brown has failed to exhaust his allegations involving deprivation he suffered via the Ventimiglia ruling and the refusal of expert funds. On direct appeal, Brown couched these claims solely in state law terms. Dkt. No. 18-1 at 65–67. Further, only the point-headings for both claims referenced phrases such as "fair trial" and "due process of law." "[S]uch references, without more, [are] not sufficient to fairly alert the state court to a federal constitutional claim." Jackson v. Lee, 10-CV-3062, 2010 WL 4628013, at *22 n. 33 (S.D.N.Y. Nov. 16, 2010) (citing inter alia Petrucelli v. Coombe, 735 F.2d 684, 688 (2d Cir. 1984) ("A 'mere statement that 'due process' rights have been violated does not necessarily give rise to a specific federal constitutional claim. 'Due process,' like 'fair trial,' can be a catchphrase used by habeas petitioners as part of an allegation about any type of trial court

error . . . .") (internal quotation marks omitted)).  Thus, Brown's challenges to the Ventimiglia ruling and the trial court's denial expert funds are unexhausted.

Brown has also failed to exhaust his ineffective assistance of trial counsel claim. Respondent concedes that Brown has exhausted his allegations that trial counsel failed to object to the prosecutor's summation comments and to move for an order of dismissal; however, such allegations are in fact unexhausted.  Defs.' Mem. of Law at 20.  Brown's appellate brief rely solely on state cases and do not cite to specific provisions of the U.S. Constitution.  Dkt. No. 18-1 at 64–65.  Brown cited to People v. Flores, which referenced the Sixth Amendment of the U.S. Constitution and other state cases citing Supreme Court cases; however, Flores does not analyze contentions similar to Brown's in constitutional terms.  84 N.Y.2d 184, 186 (1994) (discussing the contention that defense counsel failed to request relief or a mistrial when defense counsel received new evidence after the jury returned a guilty verdict); see also People v. Baldi, 54 N.Y.2d 137, 146 (1981) (Baldi's alleged areas of counsel inadequacy included:  (1) failure to pursue actual innocence claim; (2) handling of expert witnesses; (3) counsel's statements at trials, Huntley hearing, and his own summations; (4) counsel's role in certain interrogations; and (5) the suppression of defendant's confession.).  Further, the claims were not made in terms so particular as to call to mind a specific right protected by the Constitution as Brown simply provided conclusory statements to support such claims.  Dkt. No. 18-1 at 65.  Thus, Brown has failed to exhaust his ineffective assistance of trial counsel on this ground.

In addition, the state court was denied an opportunity to review together all of Brown's ineffective assistance allegations because the portions of the claim alleging the failure to object to the improper jury instructions, restriction on defense counsel's movements,

17

limitation on the questioning of Wainwright, and the <u>Ventimiglia</u> ruling, were raised for the first time on habeas review.  <u>Rodriguez v. Hoke</u>, 928 F.2d 534, 538 (2d Cir. 1991) (reasoning that all allegations of an ineffective assistance of counsel claim should be reviewed together, since "[t]he state courts should have been given the opportunity to consider all the circumstances and the cumulative effect of all the claims as a whole." (citation omitted)).  Therefore, Brown has failed to exhaust his ineffective assistance of trial counsel claim.

Lastly, Brown's ineffective assistance of appellate counsel claim is unexhausted because it was raised for the first time in his habeas petition.  Under New York law, a petitioner must raise an ineffective assistance of appellate counsel claim in a <u>coram</u> <u>nobis</u> motion.  <u>Taylor v. Scully</u>, 674 F. Supp. 462, 463 (S.D.N.Y. 1987) (citations omitted); <u>People v. Bachert</u>, 69 N.Y.2d 593, 595–96 (1987).  Because Brown failed to file a <u>coram</u> <u>nobis</u> motion in state court, he never apprised the state court of his federal ineffective assistance of appellate counsel claim.  Thus, this claim is also unexhausted.

A claim that was not fairly presented to the state courts and does not satisfy the requirements of § 2254(b)(1) may still be "deemed" exhausted by the habeas court "if it is clear that the state court would hold the claim procedurally barred."  <u>Grey v. Hoke</u>, 933 F.2d 117, 120 (2d Cir. 1991) (collecting cases); <u>Aparicio</u>, 269 F.3d at 90 ("When a claim has never been presented to a state court, a federal court may theoretically find that there is an 'absence of available State corrective process' under § 2254(b)(1)(B)(I) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile.").

In this case, Brown's ineffective assistance of appellate counsel claim remains

unexhausted but the ineffective assistance of trial counsel, <u>Ventimiglia</u> ruling, and denial of expert funds claims are deemed exhausted. Brown can return to the Appellate Division and raise the ineffective assistance of appellate counsel claim in a <u>coram</u> <u>nobis</u> motion. <u>Smith v. Duncan</u>, 411 F.3d 340, 347 n. 6 (2d Cir. 2005) (noting that there is no time limit for filing a writ of error coram nobis) (citations omitted); <u>People v. Bachert</u>, 69 N.Y.2d 593, 595–96, 599 (1987) (holding that a <u>coram</u> <u>nobis</u> motion is the appropriate mechanism for raising a claim of ineffective assistance of appellate counsel at the appellate court). However, Brown cannot return to state court with his unexhausted claims because he had already sought direct appeal of his conviction. <u>Grey v. Hoke</u>, 933 F.2d 117, 120–21 (2d Cir. 1991); <u>People v. Spence</u>, 82 N.Y.2d 671, 671 (1993); NEW YORK COMP. CODES, R. AND REG. tit. 22, §§ 600.8(b), 500.10 (2012). Brown is also barred from raising those claims in a § 400.10 motion or a state writ of habeas corpus because he could have raised them on direct review. <u>See</u> <u>Sweet v. Bennett</u>, 353 F.3d 135, 139–41 (2d Cir. 2009); N.Y. CRIM. PROC. LAW § 440.10(2)(c) (barring review if a claim could have been raised on direct appeal). As a result, Brown's unexhausted claims are procedurally barred from state review and are deemed exhausted. Brown can only overcome the procedural bar by showing cause for the default and actual prejudice and that the failure to consider the claim will result in a fundamental miscarriage of justice. <u>Aparicio</u>, 269 F.3d at 89–90.

Brown claimed that ineffective assistance of both trial and appellate counsel constitutes cause for the claims concerning the <u>Ventimiglia</u> ruling. Pet. ¶ 13. To successfully allege such a cause, the petitioner must raise ineffective assistance as a separate claim and the claim must have merit. <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451–52 (2000). While Brown raised ineffective assistance of both trial and appellate counsel each as a separate claim,

as discussed infra, he has failed to demonstrate that either of the claims are meritorious. Thus, Brown has failed to establish cause for overcoming the procedural bar. Brown did not present any cause for the procedural default for the remaining claims. Because cause is not established, the Court does not need to reach the inquiry on prejudice. Horton v. Ercole, 557 F. Supp. 2d 308, 323 (N.D.N.Y. 2008) (citations omitted). As for the fundamental miscarriage of justice, Brown does not allege new evidence tending to establish his actual innocence. Thus, Brown's unexhausted claims are deemed procedurally defaulted.

### III. Independent and Adequate State Law Grounds

Federal habeas review of a question of federal law decided by a state court is prohibited if the state court rested its judgment "on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman, 501 U.S. at 729 (citations omitted) (noting that federal court resolution of the federal issue would merely be advisory where the state judgment is supported by independent and adequate state grounds); see also Harris v. Reed, 489 U.S. 255, 261–62 (1989); Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003); Garcia v. Lewis, 188 F.3d 71, 76 (2d Cir. 1999); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995). "This rule applies whether the state law ground is substantive or procedural." Coleman, 501 U.S. at 729 (citation omitted). "Because it can be difficult to determine if the state law discussion is truly an independent basis for decision or merely a passing reference, . . . such reliance on state law must be clear from the face of the opinion." Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000) (internal quotation marks omitted) (citing Coleman, 501 U.S. at 732, 735). Thus,

20

the mere existence of a state procedural default is not enough, as the Supreme Court explained,

> the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case. Moreover, we will not assume that a state-court decision rests on adequate and independent state grounds when the state court decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.

Caldwell v. Mississippi, 472 U.S. 320, 327 (1985) (internal quotation marks and citations omitted).

In addition to being "independent," the state procedural bar must also be "adequate." Cotto, 331 F.3d at 239. Adequacy requires a state procedural ground that is "strictly or regularly followed." Johnson v. Mississippi, 486 U.S. 578, 587 (1988) (citations omitted). A violation of such "firmly established and regularly followed" state rules would ordinarily be adequate to bar federal review. Cotto, 331 F.3d at 239–40 (internal quotation marks omitted). In an "exceptional case[] in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question[,]" the court considers three guideposts in determining whether a procedural bar is adequate to preclude federal review of claims raised in the petition:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

Id. at 240.

A claim that is procedurally defaulted due to an adequate and independent state law ground may avoid the procedural bar if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750; DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004) (citations omitted); Ramirez v. Attorney General of New York, 280 F.3d 87, 94 (2d Cir. 2001); Aparicio, 269 F.3d at 90. "Cause" requires a showing that "some objective factor external to the defense impeded counsel's efforts to raise the claim in state court" or that the basis for a claim was not reasonably available to counsel. Levine, 44 F.3d at 127 (internal quotation marks and citations omitted). As for a miscarriage of justice, this necessarily involves a showing that the petitioner is actually innocent. Sweet, 353 F.3d at 141. The petitioner must "show that a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327 (1995) (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)) (internal quotation marks omitted). This probability standard requires a showing "that it is more likely than not that no reasonable juror would have convicted [the petitioner] in the light of the new evidence." Id.

In this case, Brown's prosecutorial misconduct, trial court error, legal sufficiency, and Ventimiglia ruling claims are procedurally defaulted pursuant to an independent and adequate state law ground. The Appellate Division held that these claims were either unpreserved, or unpreserved and without merit, citing to state case law and statutes. If a state court finds that a claim was unpreserved but also rejects the claim on the merits, then the claim is procedurally defaulted. Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996). The

Appellate Division also held that these claims were unpreserved on appellate review pursuant to a rule requiring parties to preserve an issue with a contemporaneous objection. Such is a firmly established and regularly followed rule. Garcia, 188 F.3d at 79–82; N.Y. CRIM. PROC. LAW § 470.05(2). This independent and adequate state law ground bars federal judicial review even when the state court disposes of the claim on its merits. Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005). As discussed infra, although Brown alleged that ineffective assistance of trial counsel constituted cause, that claim is unexhausted, meritless, and cannot establish cause, Murray, 477 U.S. at 488–89, and prejudice cannot be established because that claim is without merit, Capiello v. Hoke, 698 F. Supp. at 1052. Moreover, Brown did not proffer any new evidence establishing his actual innocence. Therefore, Brown's prosecutorial misconduct, trial court error, legal sufficiency, and Ventimiglia ruling claims are procedurally barred by an adequate and independent state law ground.

## IV.  Mixed Petition

A habeas petition containing both exhausted and unexhausted claims is a "mixed" petition. Rhines v. Weber, 544 U.S. 269, 271 (2005). "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). A district court confronted with a mixed petition has discretionary power to dismiss it in its entirety, or "stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims." Rhines, 544 U.S. at 275. The stay-and-abeyance procedure is available only when the petitioner's failure to exhaust his claims was based on

good cause. Id. at 277. However, even if good cause exists, granting a stay would be an abuse of discretion if the unexhausted claims are plainly meritless. Id. (citation omitted). Here, the Court has previously denied Brown's motion to stay the habeas corpus petition. Dkt. No. 11 at 3. Brown explained his failure stemmed from experiencing difficulty in accessing the prison's law library. Dkt. No. 5 ¶ 9. However, an inmate's "lack of access to a law library does not constitute good cause pursuant to Rhines." Berry v. Jacquez, No. 10-CV-0305, 2011 WL 4738336, at *5 (E.D.Cal. Oct. 5, 2011). Thus, Brown has failed to meet the Rhines stay-and-abeyance standard of demonstrating good cause and raising a colorable claim. Further, nothing in the record since the Court's denial of the motion to stay the petition suggests that this analysis should be altered. Moreover, as discussed infra, all of Brown's claims, both exhausted and unexhausted, are meritless.

Accordingly, Brown's mixed petition should not be stayed and held in abeyance and the Court should proceed with denying the petition on the merits.

## V. Merits

### A. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may grant a writ of habeas corpus only if the state court's adjudication on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000); Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006); DeBerry v. Portuondo, 403 F.3d 57, 66 (2d Cir. 2005).

The Supreme Court has given independent meaning to the "contrary to" and "unreasonable application" clauses in § 2254(d)(1). Williams, 529 U.S. at 405. "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 412–13. As for the "unreasonable application" clause, a writ may be granted if "the state court's application of clearly established federal law was objectively unreasonable." Id. at 409, 413. "[A]n unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. In addition, the statutory phrase "clearly established Federal law . . . refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions . . . ." Id. at 412 (internal citations omitted).

The petitioner bears the burden of proving, by a preponderance of the evidence, that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); see also Smalls v. Batista, 191 F.3d 272, 278 (2d Cir. 1999); Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997). Further, when evaluating a habeas petition, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); DeBerry, 403 F.3d at 66.

In this case, the Appellate Division held that the claims of prosecutorial misconduct, ineffective assistance of trial counsel, sufficiency of the evidence, and denied funding for

experts were without merit.  Thus, the AEDPA review standard applies for those claims.  As

for the balance of the petition, because the state court did not adjudicate those claims on

the merits, the Court reviews them de novo.  Aparicio, 269 F.3d at 93 (citing Washington v.

Schriver, 255 F.3d 45, 55 (2d Cir. 2001)).


## B.  Prosecutorial Misconduct

### i.  Proper Impeachment

Federal habeas relief is generally not granted for claims of mere error concerning state

evidentiary determinations.  See Estelle v. McGuire, 502 U.S. 62, 67–68, 71–72 (1991).

Rather, the error must be of such constitutional magnitude as to deprive the petitioner of a

protected constitutional right.  Ponder v. Conway, 748 F. Supp. 2d 183, 199 (W.D.N.Y.

2010).  Erroneously admitted evidence may achieve such constitutional magnitude if,

"viewed objectively in light of the entire record before the jury," it provided the basis for

conviction.  Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985) (citation omitted).

"As a general rule, the credibility of any witness can be attacked by showing an

inconsistency between his testimony at trial and what he has said on previous occasions."

Cusamamo v. Donelli, No. 06-CV-6047 (PAC) (THK), 2007 WL 7216166, at *14 (S.D.N.Y.

Dec. 19, 2007) (citing People v. Duncan, 46 N.Y.2d 74, 80 (1978)).  To proceed in eliciting

prior inconsistent statements, an opportunity must be given to the witness to explain any

inconsistencies between his trial testimony and prior statements.  Id. at n. 11 (citations

omitted).

Here, the record shows that Appellate Division was not unreasonable in determining

that the prosecutor properly attempted to impeach Cruz.  To lay the foundation for eliciting

26

Cruz's prior inconsistent statements, the prosecution refreshed Cruz's memory with his signed police statement that was given two hours after the shooting. Tr. #3 at 27–29. The prosecutor asked Cruz if he had previously testified that: (1) Powell pointed down the street but then testified that Powell could not move his hands after the shooting; (2) Powell said a red truck drove away but then testified Powell did not make that comment; and (3) Powell did not say an "Ester" or "Astro" had shot him. Id. at 29–31, 36. Further, the prosecutor offered Cruz an opportunity to explain inconsistencies among his statements, which Cruz elected to do by reasoning that the police officers fabricated the contents of his statement or he did not remember if he made those prior statements. Id. at 29, 37. Thus, the prosecutor appropriately laid the foundation and allowed a response consistent with state evidentiary rules. Despite Cruz's status as a prior prosecution witness, it was within the prosecutor's right to pose questions "designed to impeach [Cruz's] credibility. . . ." Jones v. Keane, 250 F. Supp. 2d 217, 236 (W.D.N.Y. 2002) (citing Perez v. Jones, 935 F.2d 480, 483 (2d Cir. 1991)). Therefore, the state court's adjudication on the merits was consistent with state evidentiary law. As there was no error regarding the determination, it also cannot be said that there was any constitutional deprivation presented by the Appellate Division's holdings regarding the cross-examination and impeachment. Thus, the Appellate Division was neither contrary to, or involved an unreasonable application of Estelle v. McGuire, nor was it based on an unreasonable determination of the facts.

Accordingly, Brown's petition on this ground should be denied.


## ii. Improper Comments

Generally, a prosecutor's comments during either the trial or summation alone will not

overturn a petitioner's conviction.  <u>Gonzalez v. Sullivan</u>, 934 F.2d 419, 424 (2d Cir. 1991)

(citing <u>United States v. Young</u>, 470 U.S. 1, 11 (1985)).  The prosecutor's comments must be

"so egregious as to violate the defendant's due process rights."  <u>Tankleff v. Senkowski</u>, 135

F.3d 235, 252 (2d Cir. 1998) (citing <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 647–48

(1974); <u>Floyd v. Meachum</u>, 907 F.2d 347, 353 (2d Cir. 1990)).  The petitioner must establish

"that he suffered actual prejudice because the prosecutor's comments during summation

had a substantial and injurious effect or influence in determining the jury's verdict."  <u>Id.</u>

(citation omitted).  To determine whether actual prejudice was suffered due to prosecutorial

misconduct, the Second Circuit has "considered the severity of the misconduct[,] the

measures adopted to cure the misconduct[,] and the certainty of conviction absent the

improper statements."  <u>Id.</u> (internal quotation marks and citations omitted).

Here, the Appellate Division's ruling that the prosecutor's summation comments were

fair responses to defense counsel's summation was neither contrary to, an unreasonable

application of clearly established Supreme Court precedents, nor was it based on an

unreasonable determination of the facts.  In his summation, defense counsel stated that

Cruz was "the last honest man," alleged that Cruz was not called as a prosecution witness

because Cruz's testimony did not fit the prosecutor's theory of the case, and the prosecutor

tried to destroy Cruz's credibility by portraying Cruz as a liar.  Tr. #3 at 213–14.  In

response, the prosecution said that Cruz's testimony was "totally unbelievable" and that

either Cruz or Stewart was lying.  <u>Id.</u> at 262.  Using terms such as "'lie' to characterize

disputed testimony when the witness's credibility is clearly in issue is ordinarily not improper

unless such use is excessive or is likely to be inflammatory."  <u>Floyd</u>, 907 F.2d at 354 (citing

<u>United States v. Peterson</u>, 808 F.2d 969, 977 (2d Cir. 1987)) (concluding that the

prosecutor's use of the terms "liar" or "lie" over forty times to characterize the petitioner was excessive and no "momentary lapse of circumspection"). The prosecutor's comments were not as numerous and excessive as that in Floyd. The prosecutor responded to trial counsel's summation and highlighted the crux of the case, which turned on the credibility of several witnesses. The Supreme Court has held, "if the prosecutor's remarks were invited, and did no more than respond substantially in order to right the scale, such comments would not warrant reversing a conviction." Young, 470 U.S. at 12–13 (internal quotation marks and footnote omitted); see also Adams v. Khahaifa, No. 08-CV-0212 (MAT), 2010 WL 2509970, at *5 (W.D.N.Y. June 16, 2010) ("the prosecutor's comments amounted to nothing more than strong rhetoric regarding the overall proof at trial . . . ."). Thus, the prosecutor's comments were not sufficiently egregious as to violate Brown's due process rights or resulted in a substantial and injurious effect on the jury's verdict. Moreover, such remarks were invited and offered in retort to defense counsel's summation. Therefore, it cannot be said that the state court ruling was contrary to, or involved an unreasonable application of clearly established Supreme Court law, nor was it based on an unreasonable determination of the facts.

It is well established law that a prosecutor may not vouch for his or her witnesses' credibility. Young, 470 U.S. at 8; United State v. Newton, 369 F.3d 659, 681 (2d Cir. 2004); Robinson v. Graham, 671 F. Supp. 2d 338, 363 (N.D.N.Y. 2009). However, the prosecutor may rebut when the defense counsel attacks his credibility or the credibility of his witnesses. Robinson, 671 F. Supp. 2d at 363 (citing United States v. Carr, 424 F.3d 213, 227 (2d Cir. 2005)); Norwood v. Artis, 487 F. Supp. 2d 321, 331 (W.D.N.Y. 2007) (citing United States v. Rivera, 22 F.3d 430, 438 (2d Cir. 1994)). Moreover, the prosecutor may

further contend that "a particular witness is believable or not worthy of belief by referring to evidence in the case." Robinson, 671 F. Supp. 2d at 363 (citing United States v. Perez, 144 F.3d 204 (2d Cir. 1998)). Here, the prosecutor connected his own credibility to his witnesses' credibility by stating that he would not put someone on the witness stand whom he believed was not telling the truth. Tr. #3 at 255. However, the comment fairly responded to defense counsel's attack on why the prosecution did not call Cruz to testify. Young, 470 U.S. at 12; Ogletree, 559 F. Supp. 2d at 260. Further, juries are presumed to have followed the court's instructions. Greer v. Miller, 483 U.S. 756 n. 8 (1987). Prior to the summations, the jury was instructed that summations were not to be considered as evidence and was later instructed that the witnesses' testimony and the exhibits constituted evidence. Tr. #3 at 209–10, 283–84. Thus, it cannot be said that the state court ruling was contrary to, or involved an unreasonable application of clearly established Supreme Court law, nor was it based on an unreasonable determination of the facts.

Accordingly, Brown's petition on this ground should be denied.

## C. Ineffective Assistance of Trial Counsel

The Sixth Amendment mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. "[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970). To prevail on this claim, petitioner must satisfy a two-prong test showing that his counsel's performance was deficient and that such deficient performance caused actual prejudice to the petitioner. Strickland v. Washington, 466 U.S. 668, 687 (1984). "Deficient performance" requires petitioner to show that

counsel's performance "fell below an objective standard of reasonableness." <u>Murden v. Artuz</u>, 497 F.3d 178, 198 (2d Cir. 2007) (quoting <u>Strickland</u>, 466 U.S. at 688). "Prejudice" requires petitioner to show that there is a reasonable probability that, but for counsel's deficient performance, the outcome would have been different. <u>Strickland</u>, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>

Federal courts apply a "highly deferential" standard of review for a claim of ineffective assistance of counsel alleged in a habeas corpus petition. <u>Premo v. Moore</u>, __ U.S. __, 131 S. Ct. 733, 740 (2011) (collecting cases). A federal habeas court must not equate unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d) for once the latter applies, "the question is not whether counsel's actions were reasonable . . . [but it is] whether there is any reasonable argument that counsel satisfied <u>Strickland's</u> deferential standard." <u>Id.</u> For numerous reasons, outlined below, Brown has failed to establish that counsel's performance fell below <u>Strickland's</u> deferential standard or that the state courts unreasonably applied Supreme Court precedents.

Trial counsel's overall performance did not fall below an objective standard of reasonableness and was not deficient. First, trial counsel filed an omnibus motion making a number of demands. The motion led to <u>Sandoval</u>, <u>Ventimiglia</u>, and <u>Wade</u> hearings. Second, in his opening statement, trial counsel argued that Wainwright was the shooter, Wainwright conspired with other prosecution witnesses to identify Brown as the shooter, the hostility between the different men was gang-related, Maurice West implicated Wainwright in his brother's murder, and because Brown was new to Utica and had no connections with Powell or Brian West, Brown had no animosity toward them. Tr. #1 at 261–71. At trial,

defense counsel highlighted Evers's perjury arrest, Wainwright's gang membership, and alleged attempts to conspire against Brown. Tr. #2 at 316–17, 328. Third, trial counsel elicited testimony from: (1) Brown that Evers said to Wainwright, "[y]ou just bodied those two"; (2) Cruz that he heard Powell saying "Ester" or "Astro" as the man who shot him, a name which is similar to "Castro," Wainwright's street name; and (3) Maurice West that he told the police Wainwright had shot and killed his brother and Powell. Tr. #3 at 11, 73–75, 103. Finally, in his summation, trial counsel repeated his theory of the case. Tr. #3 at 210–244. Thus, a reasonable argument is made that trial counsel provided meaningful representation.

Brown's specific allegations of trial counsel's ineffectiveness must also fail. Brown alleged that trial counsel failed to make several objections. As discussed previously and below, Brown is not entitled to habeas review based on the prosecutor's summation comments, trial court's jury instruction, restriction of trial counsel's movement, and trial counsel's limited cross-examination of Wainwright. In addition, Brown's challenge to the Ventimiglia ruling is meritless. See subsection IV(G) infra. Thus, trial counsel's performance did not fall below an objective standard of reasonableness and even if his performance was deficient, the outcome would not have been different.

Lastly, the record does not support Brown's claim that trial counsel's performance was deficient in failing to move for a trial order of dismissal. Because Brown cannot establish that the evidence supporting his conviction was legally insufficient, see subsection IV(D), such a motion would be meritless and counsel is not required to make meritless arguments. See, e.g., United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir.) ("the failure to make a meritless argument does not rise to the level of ineffective assistance), cert. denied, 516

U.S. 927 (1995). This follows that even assuming trial counsel's performance was deficient, the deficiency did not cause actual prejudice to Brown because Brown's legal sufficiency argument is without merit and the outcome would not have been different. Thus, it cannot be said that the state court ruling was contrary to, or involved an unreasonable application of clearly established Supreme Court law, nor was it based on an unreasonable determination of the facts.

Accordingly, Brown's petition on this ground should be denied.

### D. Sufficiency of the Evidence

In seeking habeas corpus review, a petitioner who claims that the evidence was insufficient to sustain a conviction bears a "very heavy burden." <u>Fama v. Comm'r of Corr. Servs.</u>, 235 F.3d 804, 811 (2d Cir. 2000). "[T]he critical inquiry on the review of the sufficiency of the evidence . . . [is] whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 318 (1979). The reviewing court must determine if, "after viewing the evidence in light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Id.</u> at 319 (emphasis in original). The reviewing court defers to the jury's determination as to the weight of the evidence and the credibility of the witnesses. <u>United States v. Velasquez</u>, 271 F.3d 364, 370 (2d. Cir 2001).

In considering the sufficiency of the evidence on a state conviction, the federal court must first examine state law to determine the elements of the crime. <u>Fama</u>, 235 F.3d at 811. Under New York law, "[a] person is guilty of murder in the second degree when[,] . . . [w]ith intent to cause the death of anther person, he causes the death of such person or of

a third person." N.Y. PENAL LAW § 125.25(1) (McKinney 2012). In this case, viewing the evidence in the light most favorable to petitioner pro se, it shows that Brown and Powell got into a dispute and Brown confronted Powell and Brian West, outside Garcia's apartment. Brown drew a gun from his waistband then shot and killed both Powell and Brian West. Based on these facts, a reasonable trier of fact could have found the essential elements of the crime established beyond a reasonable doubt. Brown couched his legal sufficiency claim on inconsistencies and credibility determinations that are reservedly determined by the jury. Cavazos v. Smith, __ U.S. __, 132 S. Ct. 2, 6–7 (Oct. 31, 2011). When evaluating such claims in this context, "with a record of historical facts that support[] conflicting inferences [the court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326. Accordingly, for the reasons previously cited, the Appellate Division's ruling on this claim was not contrary to, nor an unreasonable application of, clearly established Federal law. Further, the state court's determination of the facts was not unreasonable.

Accordingly, Brown's petition on this ground should be denied.


### E. Expert Funds

Under New York law, "[u]pon a finding . . . that investigative, expert or other services are necessary and the defendant or other person . . . is financially unable to obtain them, the court shall authorize counsel . . . to obtain the services on behalf of the defendant or such other person." N.Y. COUNTY LAW § 722-c. Thus, "[t]he decision to appoint experts to assist a defendant is left to the sound discretion of the trial court." Johnson v. Harris, 682

34

F.2d 49, 50 (2d Cir. 1982) (citations omitted).  Further, "there is no federal constitutional requirement that a criminal defendant be appointed an expert at the public['s] expense." Carter v. Poole, No. 04-CV-1386, 2008 WL 2949385, at *17 (N.D.N.Y. July 30, 2008) (citing Welch v. Artus, No. 03-CV-865S, 2007 WL 962931, at *17 (W.D.N.Y. Mar. 29, 2007); Wilson v. Goord, No. 00-CV-4849 (LTS), 2004 WL 226149, at *7 (S.D.N.Y. Feb. 6, 2004)). As such, this claim is not cognizable on habeas review and it cannot be said that the Appellate Division was unreasonable when it held that Brown had failed to show that fees were necessary for securing expert services.

Accordingly, Brown's petition on this ground should be denied.

## F.  Trial Court Errors

### i.  Jury Instructions

"A jury charge in a state trial is normally a matter of state law and is not reviewable on federal habeas corpus absent a showing that the alleged errors were so serious as to deprive defendant of a federal constitutional right."  Smith v. Montanye, 505 F.2d 1355, 1359 (2d Cir. 1974) (citing inter alia, Cupp v. Naughten, 414 U.S. 141, 146 (1973)).  To establish a violation of the right to a fair trial on a claim of erroneous jury charge, "the petitioner must [first] show that he was erroneously deprived of a jury instruction to which he was entitled under state law."  Bell v. Ercole, 631 F. Supp. 2d 406, 416 (S.D.N.Y. 2009) (internal quotation marks and citation omitted).  Second, the petitioner must show that the instruction "so infected the entire trial that the resulting conviction violates due process."  Id. at 416–17 (citing Estelle, 502 U.S. at 71).  Thus, petitioner bears a "high burden" when proffering such allegations.  Id. (citation omitted).

Here, Brown's erroneous jury instruction claim regarding prior convictions is without merit. Brown contends that the same charge should have been given when it was revealed that he possessed an identification card bearing someone else's name as was given during the prosecution's case. However, Brown presents no explanation for why he was entitled to the same set of instructions. See People v. Priester, 116 A.D.2d 747, 747–48 (2d Dep't 1986) (holding defendant was not entitled to a jury instruction for considering evidence of a prior conviction because the defendant's reason for entitlement was meritless). Moreover, the court also gave what amounted to the same charge at the end of the trial, which applied to all evidence concerning prior convictions and bad acts. Tr. #3 at 287. Even assuming that Brown was entitled to an instruction and deprived of it, Brown failed to allege any support showing that the instruction infected the entire trial and resulted in his conviction. Therefore, Brown was not deprived of the jury instruction at issue and the claim is without merit.

Accordingly, Brown's petition on this ground should be denied.


### ii. Restriction of Counsel's Movement

"A restriction is 'reasonable' if 'it is wholly consistent with the government's legitimate interest in preserving the property for the use to which it is lawfully dedicated." Bank v. Katz, 424 F. App'x 67, 68 (2d Cir. 2011) (citing inter alia, Make the Road by Walking, Inc. v. Turner, 378 F.3d 133, 147 (2d Cir. 2004)). Courts have the inherent power to maintain order and decorum in the courtroom. Id. (citing Huminski v. Corsones, 396 F.2d 53, 77–78 (2d Cir. 2004)). This power includes disciplining attorneys. Xiao Xing Ni v. Gonzales, 494 F.3d 260, 267 (2d Cir. 2007). Liberally construing Brown's petition, Brown alleged that the

trial court's restriction of his trial counsel's movement deprived him of his right to present a

defense.  However, such a restriction was within the province of the court and Brown fails to

allege how the admonition adversely affected trial counsel's line of questioning or ability to

represent him.  Thus, Brown has not articulated how this restriction impinged upon his

constitutional rights.  Further, Brown cannot show that this restriction prejudiced his defense

in any way because the admonition was delivered in the jury's absence.  Thus, Brown's

petition on this ground is without merit.

Accordingly, Brown's petition on this ground should be denied.


### iii.  Right to Confrontation

The Confrontation Clause of the Sixth Amendment directs that "[i]n all criminal

prosecutions, the accused shall enjoy the right . . . to be confronted with the witness against

him."  U.S. CONST. amend. VI.  "The right to confrontation is basically a trial right . . .

includ[ing] . . . the opportunity to cross-examine and the occasion for the jury to weigh the

demeanor of the witness."  Barber v. Page, 390 U.S. 719, 725 (1968).  A petitioner is

deprived of this right when he is "prohibited from engaging in otherwise appropriate cross-

examination designed . . . to expose to the jury the facts from which jurors . . . could

appropriately draw inferences relating to the reliability of the witness."  Delaware v. Van

Arsdall, 475 U.S. 673, 680 (1986) (internal quotation marks and citation omitted).  However,

"trial judges retain wide latitude" to restrict cross-examinations.  Id. at 679.  "Limitations on

cross-examinations raised in habeas petitions have been found to have not violated the

Confrontation Clause . . . where cross-examination would have probed matters deemed

collateral."  Soto v. Donelli, No. 06-CV-5816, 2010 WL 4242602, at *5 (S.D.N.Y. Apr. 8,

2010) (citation omitted).  In New York, collateral evidence "is not relevant to some issue other than credibility and it is not offered for the purpose of disproving facts set forth by a witness for the opposing side on direct examination."  Lugo v. Edwards, No. 97-CV-7789 (DC), 1998 WL 601080, at *5 (S.D.N.Y. Sept. 9, 1998) (citation omitted).  Further, there is no Confrontation Clause violation "if [the] defendant has ample opportunity to conduct effective cross examination."  Id. at *6 (citations and internal quotation marks omitted).

Here, the limitation on Wainwright's cross-examination was proper.  Whether Wainwright had worked without paying taxes and sold drugs were collateral matters because they were irrelevant to any issue other than credibility and it was not offered to disprove facts set forth by a prosecution witness.  Further trial counsel had an ample opportunity to cross-examine Wainwright.  Tr. #2 at 300–35.  Therefore, the trial court properly limited Wainwright's cross-examination.

Further, any error resulted from the cross-examination was harmless.  Perkins v. Herbert, 596 F.3d 161, 176–77 (2d Cir. 2010) (concluding that Confrontation Clause errors are subjected to harmless error review).  An error is harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict."  Fry v. Pliler, 551 U.S. 112, 116 (2007) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).  Even if the jury learned about Wainwright's prior bad acts, it is highly unlikely that the jury would acquit Brown because eye-witnesses saw Brown and Powell got into a dispute, Brown confronted Powell and Brian West outside Garcia's apartment, and Brown drew a gun from his waistband then shot and killed both Powell and Brian West.  Brown cannot show that the non-admission of Wainwright's prior bad acts had a substantial and injurious effect or influence in determining the jury's verdict.  Thus, the trial court's limitation of Wainwright's

cross-examination did not violate the Confrontation Clause.

Accordingly, Brown's petition on this ground should be denied.

Lastly, because Brown's prosecutorial misconduct and trial court errors claims are without merit, Brown's claim that the cumulative effect of such alleged errors could not render Brown trial fundamentally unfair. Collins v. Scully, 878 F. Supp. 452, 460–61 (E.D.N.Y. 1995) (collecting cases).

Accordingly, Brown's petition on this ground should also be denied.


### G. **Ventimiglia** Ruling

The trial court's Ventimiglia ruling was a state evidentiary ruling issue, which could deprive the petitioner of a protected constitutional right if it was erroneous and provided the basis for the petitioner's conviction. McKinnon v. Superintendent, Great Meadow Corr. Facility, 422 F. App'x 69, 73 (2d Cir. 2011). Under New York law, it is well settled that evidence of uncharged crimes or prior bad acts is admissible if it is relevant to issues of intent, motive, knowledge, common scheme or plan, or identity. People v. Long, 96 A.D.3d 1492, 1493 (4th Dep't 2012) (citing inter alia, People v. Alvino, 71 N.Y.2d 233, 241–42 (1987)). This evidence is also admissible to serve as background information or to complete the narrative of the events. People v. Dennis, 91 A.D.3d1277, 1279 (4th Dep't 2012) (citing inter alia, People v. Leeson, 48 A.D.3d 1294 (4th Dep't 2008), 1296, aff'd, 12 N.Y.3d 823 (2009)). The probative value of the evidence must outweigh the potential prejudice to the defendant, which is determined by the trial court. Alvino, 71 N.Y.2d at 242.

Here, Brown's prior acts of selling drugs and possessing a weapon and an identification card bearing someone else's name were not erroneously admitted, and even assuming the

contrary, they did not provide the basis for Brown's conviction. The probative value of the drug-dealing evidence outweighed the prejudice to Brown because it served as background information by explaining Brown's presence in Utica, association with Evers and Wainwright, and how Brown met Powell and Brian West through Evers's association with Garcia. Further, the weapon possession completes the narrative of the events prior to the double murders, explaining how Brown could have shot the victims, and admission of the identification card made certain of Brown's identity. Furthermore, none of this evidence prejudiced Brown. Brown did not and could not establish that the evidence provided the basis for his conviction because the jury heard testimonies from several witnesses indicating that they either saw Brown shoot the victims or heard Brown confessing to committing the murders. Therefore, Brown was not prejudiced by the evidence of his prior bad acts.

Accordingly, Brown's petition on this ground should be denied.


### H. Ineffective Assistance of Appellate Counsel

The Strickland standard for examining the effectiveness of trial counsel applies equally to the effectiveness of appellate counsel. Aparicio, 269 F.3d at 95. Appellate counsel is not ineffective for failing to raise meritless or weak claims. Id. at 99; see Jones v. Barnes, 463 U.S. 745, 751–52 (1983) (holding that appellate counsel is not obligated to raise every nonfrivolous claim or argument). A petitioner may prevail on this claim if he or she shows that appellate counsel omitted "significant and obvious issues while pursuing issues that were clearly and significantly weaker." Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000) (citation omitted).

Here, Brown fails to satisfy either prong of the <u>Strickland</u> standard. Brown alleged that his appellate counsel was ineffective for failing to challenge the trial counsel's failure to object to trial court errors, the <u>Ventigmlia</u> ruling, and the admission of Brown's prior bad acts into trial evidence. However, as previously discussed, such claims are without merit and appellate counsel need not make those claims. Thus, Brown has failed to show that appellate counsel omitted significant and obvious issues while pursuing weaker arguments and appellate counsel's performance did not fall below an objective standard of reasonableness. Further, despite Brown's conclusory protestations, Brown fails to present a showing that had appellate counsel presented those particular claims to the court, a different outcome would result. Thus, Brown's challenge to his appellate counsel's performance is without merit.

Accordingly, Brown's petition on this ground should be denied.

## V. Conclusion

For the reasons stated above, it is hereby:

1. **RECOMMENDED** that Brown's petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED**; AND

2. Further **RECOMMENDED** that no certificate of appealability should be issued with respect to any of Brown's claims as Brown has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). <u>See</u> 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); <u>see</u> <u>also</u> <u>Lucidore v. New York State Div. of Parole</u>,

209 F.3d 107, 112 (2d Cir. 2000).

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  March 25, 2013
         Albany, New York

Christian F. Hummel
U.S. Magistrate Judge